WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly Rowberry, | No. CV-14-01801-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Wells Fargo Bank NA, et al., | |
| Defendants. | |

Before the Court is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion for Summary Judgment. (Doc. 37.) The motion is fully briefed. For the following reasons, Wells Fargo's motion is granted.

## BACKGROUND

This case arises from the termination of Plaintiff Kimberly Rowberry's employment with Wells Fargo. Rowberry alleges that Wells Fargo wrongfully terminated her for: (1) refusing to join in her supervisor's scheme of falsifying bank records; (2) requesting/taking leave under the Family and Medical Leave Act ("FMLA"); (3) seeking Arizona workers' compensation; and (4) her disabling back issues and anxiety. (*See* Doc. 1-1.) She also alleges that Wells Fargo or certain of its employees made defamatory statements about her termination. (*Id.*)

**I. Rowberry's Employment with Wells Fargo**

Wells Fargo hired Rowberry as a teller in 2004 and promoted her several times,

including most recently to Service Manager Level 2—second in command behind Branch Manager Teresa Pena.[1]  (Doc. 38, ¶¶ 7-11.)  During this time, Rowberry requested and received accommodations for back issues.  Wells Fargo granted Rowberry FMLA leave in 2006 and 2010.  (*Id.*, ¶¶ 13, 17.)  Rowberry exhausted her FMLA leave during both absences and, each time, Wells Fargo extended her leave.  (*Id.*, ¶¶ 14, 17.)  Rowberry returned to her same position at the branch and received fair performance evaluations following each of these absences.  (*Id.*, ¶¶ 15-16, 18-19.)  To accommodate Rowberry's back issues, Wells Fargo allowed her to reduce her work schedule and provided her with an ergonomic chair.  (*Id.*, ¶ 18.)

## II. Wells Fargo's Internal Investigation

Wells Fargo uses a third party vendor to conduct customer satisfaction surveys. (*Id.*, ¶ 21.)  The vendor contacts customers to ask about their experiences at the branch using the phone numbers listed in Wells Fargo's records.  (*Id.*)   Wells Fargo calls these surveys "WOW Shops" and expects its employees to receive positive reviews.  (*Id.*, ¶¶ 21-22.)

In April 2013, a customer had a negative experience with a teller at Rowberry's branch.  (*Id.*, ¶ 23.)  The customer asked the teller for her business card and stated that she planned to complain to her private banker about the incident.  (*Id.*, ¶ 24.)  The customer left a message for her private banker to call her about the incident, but her private banker was unable to reach her using the number in Wells Fargo's records.  (*Id.*, ¶ 25.)  When the customer eventually reached her private banker, the two discovered that the customer's phone number had been changed to an incorrect number in Wells Fargo's system.  (*Id.*)

Wells Fargo assigned an investigator, Von Faler, to look into the incident.  (*Id.*, ¶ 26.)  Based on his investigation, Faler concluded that personal banker Alexis Segura had improperly changed the customer's phone number.  (*Id.*, ¶ 27.)  In May 2013, Wells

---

[1] Rowberry named Pena as a defendant but did not serve her.  (Doc. 38, ¶ 1.) Consequently, Pena was dismissed from this action on September 23, 2015.  (Doc. 43.)

1  Fargo terminated Segura's employment for falsification of records.  (*Id.*, ¶ 28.)

2  Segura appealed his termination, contending that Pena instructed him to change the customer's phone number to avoid a negative WOW Shop score.  (*Id.*, ¶ 31.) Employee Relations Consultant Michelle Wilkie investigated Segura's complaint but could not substantiate his claims.  (*Id.*, ¶¶ 33-34.)  However, Segura's claim that he changed the customer's phone number to avoid a negative WOW Shop score prompted Wilkie to audit the entire branch.[2]  (*Id.*, ¶¶ 35-36.)

Wilkie contacted Wells Fargo's Sales Quality Department and requested a list of all questionable phone number changes at the branch between January 1, 2013, and April 30, 2013. (*Id.*, ¶ 36.)  Sales Quality produced 18 phone number changes that appeared questionable.  (*Id.*)  Wilkie asked Sales Quality to gather similar information from a comparable branch to determine if the number of questionable phone number changes at Rowberry's branch was normal.  (*Id.*)  Sales Quality produced only five questionable phone number changes at the comparison branch.  (*Id.*)  Based on this information, Wilkie asked Faler and Investigator Larenn Griffus to investigate the phone number changes at Rowberry's branch.  (*Id.*, ¶ 37.)

Wells Fargo identified five employees, including Rowberry, who had questionably changed customer phone numbers.  (*Id.*, ¶ 36.)  Griffus and Faler interviewed these employees and concluded that the phone numbers changed by all except Rowberry were legitimate or adequately explained.  (*Id.*, ¶¶ 38-43.)

Griffus and Faler determined that Rowberry had changed the home and cell phone numbers of a customer in February 2013.[3]  (*Id.*, ¶ 48.)  They also discovered that other

---

[2] Rowberry denies that Wilkie was concerned about Segura's claims, but cites only to an email from Pena to Rowberry in which Pena discusses Segura's termination. (Doc. 40, ¶ 35.)  Nothing in the email contradicts the statement that Wilkie was concerned about Segura's claims that he changed customers' phone numbers to avoid negative WOW Shop scores.

[3] Rowberry denies this fact, but cites only to a document that appears to have been prepared by Rowberry herself, and which narrates an alleged conversation between her and Faler regarding her termination.  (Doc. 40, ¶ 48; Doc. 40-1 at 30.)  Nothing in this document contradicts Wells Fargo's statement of fact. Moreover, Rowberry fails to explain what this document is, its context, how it was produced, or who produced it. The

- 3 -

1  Wells Fargo employees corrected the customer's numbers in March and April, indicating
2  that Rowberry's changes were not valid. (*Id.*, ¶ 49)  Griffus and Faler reviewed security
3  footage for the date the phone numbers were altered and found that Rowberry spent
4  almost an hour with a visibly angry customer. (*Id.*)  The investigation revealed that the
5  customer's phone numbers were changed the same day as this visit by someone using
6  Rowberry's user identification number. (*Id.*, ¶ 51.)

7  Griffus and Faler interviewed Rowberry about the phone number changes on June
8  20, 2013. (*Id.*, ¶ 52.)  Rowberry stated that she did not recall changing this customer's
9  phone numbers, but that she often changed customer phone numbers. (*Id.*)  Based on this
10  information, Wells Fargo placed Rowberry on paid administrative leave pending the
11  outcome of the investigation. (*Id.*, ¶ 53.)  Rowberry contends that Faler informed her
12  during this meeting that her employment was going to be terminated.[4] (*Id.*, ¶ 54.)

13  The following day, Wells Fargo District Manager Justin Martz contacted the
14  customer to ask about his experience at the branch. (*Id.*, ¶ 55.)  He confirmed that he had
15  a negative experience and that he had not requested any phone number changes. (*Id.*)

16  **III.  Rowberry's Termination**

17  On June 24, 2013, Wells Fargo decided to terminate Rowberry's employment for
18  falsifying customer phone numbers. (*Id.*, ¶ 56.)  The following day, Pena left a message
19  for Rowberry to come into the branch at 4:00 P.M. (*Id.*, ¶ 57.)  Wells Fargo intended to

---

document includes commentary, such as "THAT IS PROOF THAT I WAS FRAMED BY A CONSPIRACY FROM WELLS FARGO BANK DUE TO MY HARASSMENT COMPLAINT." (Doc. 40-1 at 30.)  As presented, the admissibility of this self-prepared document is questionable, at best.

[4] Rowberry denies this fact, but cites no admissible portion of the record. (Doc. 40, ¶ 54.)  Rowberry alleged in her complaint and stated during her deposition that the decision to terminate her employment was made on June 20, 2013. (Doc. 38, ¶ 54, Doc. 1-1, ¶ 26, Doc. 38-1 at 38-39.)  To the extent Rowberry's barebones affidavit generically avowing that "[t]he facts set forth in the response to the motion for summary judgment and the response to statement of facts are true and correct and are incorporated herein by this reference," (Doc. 40-2), is intended to support her denial, this affidavit cannot create a genuine issue of material fact. *See Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005) (explaining that a plaintiff "cannot create an issue of fact by an affidavit controverting [her] prior deposition testimony." (quotation and citation omitted)).

terminate her at this meeting, but Rowberry did not appear.[5] (*Id.*) Instead, she submitted an application for FMLA leave and a workers' compensation claim stating that she had suffered a workplace injury on May 15 and 28, 2013. (*Id.*, ¶¶ 58-59.). Wells Fargo notified Rowberry by letter that her employment was terminated effective July 3, 2013, for falsification of records. (*Id.*, ¶ 60.)

Wells Fargo's third party leave administrator initially approved Rowberry's June 25, 2013 request for FMLA leave because it was unaware that Wells Fargo had terminated her employment. (*Id.*, ¶ 61.) After learning of Rowberry's termination, the leave administrator contacted Rowberry, notified her of the error, and explained that her medical leave ended when her employment was terminated. (*Id.*, ¶ 62.) Rowberry's workers' compensation claim was processed and resolved through a settlement. (*Id.*, ¶ 63.)

## PRELIMINARY ISSUES

Rowberry's separate statement of facts does not comply with Local Rule of Civil Procedure 56.1(b). It contains mostly argument, superfluous and immaterial explanation, and lengthy allegations unsupported by citation to admissible portions of the record. For purposes of this order, the Court deems admitted any statement of fact not clearly denied by Rowberry, and disregards all allegations in Rowberry's separate statement of facts that are not supported by citation to admissible portions of the record. *See Szaley v. Pima Cty.*, 371 F. App'x 734, 735 (9th Cir. 2010).

Additionally, Rowberry generically contends that Wells Fargo's "affidavits" are hearsay. (Doc. 39 at 6.) Her objections are overruled because she fails to identify any specific statements of fact that she believes are unsupported by admissible evidence.

## LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to

---

[5] Rowberry denies these facts, but nothing she cites contradicts Wells Fargo's statement. (Doc. 40, ¶ 57.)

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250). Furthermore, the party opposing summary judgment "may not rest upon mere allegations of denials of pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); *see also* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the nonmoving party's opposition fails to specifically cite to materials either in the court's record or not in the record, the court is not required to either search the entire record for evidence establishing a genuine issue of material fact or obtain the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988).

## **DISCUSSION**

**I. Wrongful Termination/Retaliation**

Rowberry's complaint does not identify the legal basis for her wrongful termination/retaliation claim. (*See* Doc. 1-1 at 13.) Wells Fargo understands the claim

as arising under the Arizona Employment Protection Act ("AEPA"), A.R.S. § 23-1501. (Doc. 37 at 10.) Rowberry does not dispute this characterization or provide an alternative legal basis for her claim. (*See* Doc. 39 at 7-8.) The Court will analyze Rowberry's claim under the AEPA.

The AEPA provides, in relevant part, that an employee has an actionable claim for wrongful termination when:

> (c) The employer has terminated the employment relationship of an employee in retaliation for any of the following:
>
> (i) The refusal by the employee to commit an act or omission that would violate the Constitution of Arizona or the statutes of this state.
>
> (ii) The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state or an employee of a public body or political subdivision of this state or any agency of a public body or political subdivision.

A.R.S. § 23-1501(A)(3)(c)(i)-(ii). To prevail, Rowberry bears the burden of establishing either that Wells Fargo terminated her employment because she refused to engage in conduct that would violate Arizona law, or because she reasonably believed Wells Fargo or its employees were violating Arizona law and she reported that information to a supervisory or investigative authority. *See Galati v. Am. W. Airlines, Inc.*, 69 P.3d 1011, 1013 (Ariz. Ct. App. 2003). Wells Fargo argues that it is entitled to summary judgment because Rowberry did not engage in activity protected by the AEPA and cannot establish a causal link between the allegedly protected activity and her termination.

**A. Protected Activity**

Rowberry alleges that she refused to follow Pena's directions to alter customer phone numbers to avoid negative WOW Shop scores. Her complaint does not identify an Arizona statute prohibiting such conduct, and she admits that she has no knowledge of whether altering customer phone numbers violates Arizona law. (Doc. 38, ¶ 75.)

1   Instead, Rowberry argues that falsifying bank records violates "federal reserve rules,
2   regulations, and the like," and that "[i]t would be anomalous if retaliation in termination
3   would only lie for breaking Arizona, and not federal law." (Doc. 39 at 7.) Rowberry's
4   argument is squarely foreclosed by *Galati*, in which the Arizona Court of Appeals
5   concluded based on the plain language of the AEPA that no "statutory public policy
6   exception exists for whistleblowing associated with federal regulations." 69 P.3d at
7   1015.[6] Rowberry bears the burden of establishing the elements of her claim; it is not the
8   duty of this Court to review the entirety of the Arizona Revised Statutes in search of a
9   provision that applies.

10  The AEPA also protects an employee who reports conduct that she reasonably
11  believes violates Arizona law, regardless of whether such conduct actually is illegal.
12  Rowberry cannot prevail under this approach because she admits that she did not know
13  whether changing customer phone numbers violates Arizona law. (Doc. 38, ¶ 75.)
14  Accordingly, based on the undisputed facts and Rowberry's unavailing legal arguments,
15  no reasonable jury could conclude that she engaged in activity protected by the AEPA.

16  **B. Causation**

17  Even if Rowberry could show that she engaged in protected activity, she cannot
18  establish a causal link between the alleged protected activity and her termination. This
19  Court could identify no Arizona authority discussing the appropriate test for determining
20  causation in AEPA retaliation cases. Some cases in this District have assumed that the
21  *McDonnell-Douglas* burden-shifting framework utilized in Title VII cases applies. *See*
22  *Levine v. TERROS, Inc.*, No. CV-08-1458-PHX-MHM, 2010 WL 864498, at *8-10 (D.
23  Ariz. March 9, 2010); *Cox v. Amerigas Propane, Inc.*, No. CV-04-101-PHX-SMM, 2005
24  WL 2886022, at *12-14 (D. Ariz. March 26, 2009). This framework determines
25  causation by asking whether "a retaliatory motive played a part in the employment
26  action." *Knox v. United States Rental Highway Techs, Inc.*, No. CIV 07-0297-PHX-

---

28  [6] Moreover, assuming, as Rowberry argues, that Arizona law somehow incorporates Federal Reserve rules, she identifies no particular Federal Reserve rule prohibiting the conduct at issue here.

- 8 -

DKD, 2009 WL 806625, at *5 (D. Ariz. March 26, 2009) (citing *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 798 (9th Cir. 1982)). The plaintiff must first establish a *prima facie* case by offering evidence that she: (1) engaged in protected activity; (2) suffered an adverse employment action; and (3) was terminated as a result. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112-13 (9th Cir. 2003). If the plaintiff makes such a showing, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its actions. *Id.* If the defendant articulates such a reason, the burden returns to the plaintiff to show that the reason is pretextual. *Id.*

More recent decisions have adopted the approach utilized in First Amendment retaliation cases. *See Revit v. First Advantage Tax Consulting Servs., LLC*, No. CV 10-1653-PHX-DGC, 2012 WL 1230841, at *4-5 (D. Ariz. April 12, 2012); *Evers v. Safety-Kleen Sys., Inc.*, No. CV 10-02556-PHX-NVW, 2012 WL 910392, at *9-10 (D. Ariz. March 19, 2012). This approach uses a two-part burden-shifting test, under which:

> an employee must prove that the conduct at issue was . . . protected, and that it was a substantial or motivating factor in the termination. If the employee discharges that burden, the [employer] can escape liability by showing that it would have taken the same action even in the absence of the protected conduct.

*Bd. Of Cty. Comm'rs, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668, 675 (1996). These decisions concluded that Arizona courts would adopt a First Amendment retaliation approach for two reasons: (1) the "substantial or motivating factor" test most closely resembles the test applied by Arizona courts in whistleblowing retaliation cases before the adoption of the AEPA, *see, e.g., Murcott v. Best Western Int'l, Inc.*, 9 P.3d 1088, 1099 (Ariz. Ct. App. 2000), and (2) by asking whether the employer would have taken the same action regardless of the employee's whistleblowing, the First Amendment retaliation test "ensures that employees will not blow the whistle simply to put themselves in a more secure position than they would have been otherwise." *Evers*, 2012 WL 910392, at *10 (citing *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 285-86 (1977)).

The Court agrees that Arizona courts likely would adopt an approach to causation

- 9 -

1  consistent with the First Amendment retaliation test. Under either standard, however, no
2  reasonable jury could conclude that Wells Fargo terminated Rowberry for refusing to
3  falsify customer phone numbers or for reporting Pena's alleged conduct. It is undisputed
4  that, after conducting an investigation, Wells Fargo concluded that Rowberry had
5  falsified customer phone numbers and terminated her for such conduct. Rowberry
6  entirely ignores the causation prong in her response to Wells Fargo's motion for
7  summary judgment. Instead, she asserts that she did not falsify customer phone numbers
8  and Wells Fargo reached the wrong conclusion through its investigation. But this Court
9  does not review the employer's internal investigation to determine whether it reached an
10 accurate result. The Court merely ensures that an employee is not terminated for a reason
11 prohibited by law. Here, it is undisputed that Wells Fargo terminated Rowberry because
12 it believed that she had falsified customer phone numbers. It is of no moment whether
13 that belief was correct, so long as Wells Fargo was not substantially motivated to
14 terminate Rowberry because she refused to violate Arizona law or reported such conduct.

15 Moreover, the decision to terminate Rowberry was made by Wilkie and Martz, not
16 by Pena,[7] and Rowberry cites no evidence suggesting that either knew of her alleged
17 refusal to falsify customer phone numbers or reports about Pena. There is no evidence
18 that Wells Fargo terminated Rowberry for refusing to violate company policy, especially
19 considering the decision to terminate Rowberry was made by people uninvolved in
20 Pena's alleged scheme. Rather, the undisputed evidence is that Wells Fargo terminated
21 Rowberry because it believed, rightly or wrongly, that she had falsified customer phone
22 numbers. Wells Fargo is entitled to summary judgment on Rowberry's AEPA claim.

23 **II. Defamation**

24 To succeed on her defamation claim, Rowberry bears the burden of proving that
25 Wells Fargo published false statements concerning her "honesty, integrity, virtue, or
26 reputation," and that the statements were not privileged. *Turner v. Devlin*, 848 P.2d 286,

---

[7] Rowberry contends that the decision to terminate her employment was left to Pena and Martz, but the exhibit to which she cites for support says nothing about Pena being one of the ultimate decision makers. (Doc. 40, ¶ 53; Doc. 40-1 at 30.)

- 10 -

288-89 (Ariz. 1993). "Publication for defamation purposes is communication to a third party." *Dube v. Likins*, 167 P.3d 93, 104 (Ariz. Ct. App. 2007).

> One who publishes a false and defamatory communication concerning a private person . . . is subject to liability if, but only if, he (a) knows that the statement is false and it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them.

*Id.* (quoting *Rowland v. Union Hills Country Club*, 757 P.2d 105, 110 (Ariz. Ct. App. 1988)).

Rowberry contends that an unemployment determination issued by the Arizona Department of Economic Security ("DES") contains a "false and libelous" reason for her termination. (Doc. 38, ¶ 64.) Specifically, Rowberry received a Determination of Deputy from DES that cited Arizona Administrative Code ("AAC") Section R6-3-51140, entitled "Misappropriation of Funds; Falsification of Employment Records," as the reason for her termination from Wells Fargo. (*Id.*, ¶ 65.) Rowberry argues that the inclusion of the AAC section title is defamatory because it "essentially called [her] a bank robber . . . ." (*Id.*)

The DES determination cannot form the basis of an actionable defamation claim against Wells Fargo for several reasons. First, DES made the statement, not Wells Fargo. Rowberry acknowledges that she has no personal knowledge of the statements Wells Fargo made to DES regarding her termination.[8] (*Id.*, ¶ 66.) Second, Wells Fargo's actual statement to DES was true. Wells Fargo communicated to DES that Rowberry "was discharged for violating known company code of ethics by falsifying bank records." (*Id.*, ¶ 67.) Although Rowberry might disagree with the conclusion reached by Wells Fargo's internal investigators, it is undisputed that Wells Fargo's stated reason for terminating Rowberry was that it believed she was involved in falsifying bank records. (*Id.*, ¶ 68.) Third, this statement is not actionable because Rowberry has no evidence that the DES

---

[8] Rowberry denies this fact, but cites only to the DES Determination itself. (Doc. 40, ¶ 66.) Moreover, Rowberry testified at her deposition that she did not know who made the statements in the DES Determination, and she acknowledged that Wells Fargo's letter to DES stated that she "was discharged for violating known company code of ethics by falsifying bank records." (Doc. 38-1 at 57-58, 116.)

- 11 -

determination was communicated to anyone other than herself. (*Id.*, ¶ 69.) Thus, Rowberry cannot establish that the AAC section title was published.

The only other evidentiary support Rowberry offers for her defamation claim comes from an affidavit provided by Billy Ray Coach, a former Wells Fargo employee. (*Id.*, ¶ 72; Doc. 40, ¶ 96.) According to Coach, after Rowberry was terminated "[i]t was stated by store manager [Pena] and others that [Rowberry] was the one who said to change phone numbers and ruined many customers' lives." (Doc. 38-2 at 242.)

Coach's affidavit does not create a triable issue of fact. First, to the extent Rowberry's defamation claim is based on statements allegedly made by the unknown "others" referenced in Coach's affidavit, she will be unable to carry her burden of proof at trial because, without knowing the identities of the speakers, there is no way to know whether the speakers knew that their statements were false. Indeed, Coach's affidavit fails to identify specific statements made by each of the unknown "others." Second, Pena's alleged statement that Rowberry was responsible for the phone number alternations was made after Rowberry's termination. It is undisputed that Wells Fargo's stated reason for terminating Rowberry was that its internal investigators believed, rightly or wrongly, that she falsified customer phone numbers. To the extent Pena was communicating to others the reasons for Rowberry's termination, her statement is true. Coach's affidavit so vaguely describes Pena's alleged statement that it is impossible to determine the context in which it was made. Rowberry offers no evidence to elucidate the precise statement made by Pena, or the context in which and audience to whom it was made. Without such evidence, no reasonable jury could conclude based on Coach's affidavit that Wells Fargo is liable for defamation. Wells Fargo is entitled to summary judgment.

**III. FMLA Violation**

"The FMLA creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using

- 12 -

protected leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1222 (9th Cir. 2001). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the act. 29 U.S.C. § 2615(a)(1). "[T]his prohibition encompasses an employer's consideration of an employee's use of FMLA-covered leave in making adverse employment decisions[.]" *Bachelder*, 259 F.3d at 1222.

Rowberry alleges that Wells Fargo denied her FMLA leave. (Doc. 1-1, ¶¶ 49-51.) This allegation has no factual support. Wells Fargo granted Rowberry's FMLA leave requests in 2006 and 2010. (Doc. 38, ¶¶ 13, 17.) Wells Fargo's third party leave administrator approved Rowberry's June 25, 2013 request for FMLA leave and, after learning of Rowberry's termination, explained that her medical leave ended when her employment terminated. (*Id.*, ¶¶ 61-62.)

Presumably, then, Rowberry's claim is based on allegations that Wells Fargo terminated her, in part, for taking FMLA leave. This allegation, too, has no factual support. To prevail on such a claim, Rowberry must show "by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." *Bachelder*, 259 F.3d at 1225. The parties disagree about the date on which Wells Fargo decided to terminate Rowberry's employment. Rowberry alleges in her complaint and stated during her deposition that Wells Fargo made the decision on June 20, 2013. (*Id.*, ¶ 54.) Wells Fargo claims that the decision was made on June 24, 2013. (*Id.*, ¶ 56.) Either way, the decision to terminate Rowberry occurred prior to her June 25, 2013 request for FMLA leave and, therefore, her request could not have been a negative factor in the decision. Wells Fargo is entitled to summary judgment on Rowberry's FMLA claim.

**IV. Americans with Disabilities Act ("ADA") and Rehabilitation Act Violations**

Although Rowberry alleges that Wells Fargo violated the ADA and Rehabilitation Acts, (Doc. 1-1 at 15-16), she fails to respond to any of Wells Fargo's arguments on summary judgment. On the merits, her claims fail.

1 The ADA prohibits discrimination "against a qualified individual with a disability 2 because of the disability of such individual in regard to job application procedures, the 3 hiring, advancement, or discharge of employees, employee compensation, job training, 4 and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). 5 Rowberry bears the burden of proving that she (1) is disabled under the ADA, (2) is a 6 qualified individual, meaning she is able to perform the essential functions of her position 7 with or without reasonable accommodation, and (3) was discriminated against or 8 otherwise suffered an adverse employment action because of her disability. *Bates v.* 9 *United Parcel Serv., Inc.*, 511 F.3d 974, 988-89 (9th Cir. 2007).

10 Rowberry alleges that she is disabled due to her anxiety and back issues. (Doc. 11 38, ¶ 77.) The basis for her ADA claim is not clear from the face of her complaint. She 12 alleges that Wells Fargo's investigation triggered her anxiety and exacerbated her 13 conditions, (*Id.*, ¶ 78; Doc. 1-1, ¶ 53), but the fact that Wells Fargo's investigation made 14 her anxious does not amount to discrimination in "application procedures, the hiring, 15 advancement, or discharge of employees, employee compensation, job training, and other 16 terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Rowberry's 17 only allegation of discrimination is that Pena referred to her as "handicapped" during a 18 meeting in March 2013. (Doc. 38, ¶ 81.) But "'stray' marks are insufficient to establish 19 discrimination." *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990) 20 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250-52 (1989)). Rowberry offers no 21 evidence of the context for Pena's alleged remark, nor does she explain how the remark 22 relates to an adverse employment action.

23 Indeed, Rowberry's contention that Pena held discriminatory animus toward her is 24 belied by the fact that Pena promoted Rowberry after allegedly learning of her anxiety 25 and back issues. (*Id.*, ¶ 10.) Where the same actor is responsible both for hiring and/or 26 promoting the discrimination plaintiff and for taking the the alleged adverse employment 27 action, "and both actions occur within a short period of time, a strong inference arises 28 that there was no discriminatory motive." *See Bradley v. Harcourt, Brace & Co.*, 104

F.3d 267, 270-71 (9th Cir. 1996) (collecting cases).

Finally, "[t]he Rehabilitation Act is materially identical to and the model for the ADA, except that it is limited to programs that receive federal financial assistance." *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 908 (9th Cir. 2013) (quotation and citation omitted). Rowberry offers no evidence that Wells Fargo receives federal financial assistance.[9] (*Id.*, ¶ 76.) Moreover, the same standards that apply to claims under the ADA apply to claims under the Rehabilitation Act. *McLean v. Runyon*, 222 F.3d 1150, 1153 (9th Cir. 2000). Thus, Wells Fargo is entitled to summary judgment on Rowberry's ADA and Rehabilitation Act claims.

**V. Workers' Compensation Violation**

Rowberry contends that Wells Fargo terminated her in retaliation for seeking Arizona workers' compensation benefits. (*Id.*, ¶ 82.) However, it is undisputed that Rowberry filed her workers' compensation claim after Wells Fargo decided to terminate her employment. (*Id.*, ¶¶ 54, 56, 59.) Accordingly, Wells Fargo is entitled to summary judgment on Rowberry's workers' compensation retaliation claim because Rowberry cannot establish a causal connection between her application for workers' compensation benefits and her termination.

## **CONCLUSION**

For the foregoing reasons, Wells Fargo is entitled to summary judgment on all claims. Accordingly,

/ / /

/ / /

/ / /

---

[9] Rowberry disputes this fact but cites no admissible portion of the record. (Doc. 40, ¶ 76.) Moreover, Wells Fargo supports its statement of fact with citation to Rowberry's deposition, during which she stated that she does not "have a clue" about whether Wells Fargo receives federal financial assistance. (Doc. 38-1 at 76-77.) Rowberry cannot manufacture an issue of fact by contradicting her previous deposition testimony.

**IT IS ORDERED** that Wells Fargo's Motion for Summary Judgment, (Doc. 37), is **GRANTED**.  The Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 17th day of November, 2015.

Douglas L. Rayes
United States District Judge